UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACOB COLEMAN,

     Plaintiff,        Case No. 12-CV-10809

vs.              HON. MARK A. GOLDSMITH

COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.
_____/

**OPINION AND ORDER (1) ACCEPTING AND ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE DATED FEBRUARY 27, 2013 (DKT. 15), (2) OVERRULING PLAINTIFF'S OBJECTIONS (DKT. 16), (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 10), and (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 14)**

**I. INTRODUCTION**

   This is a social security case.  Plaintiff Jacob Coleman appeals from the final determination of the Commissioner of Social Security that he is not disabled and therefore not entitled to disability insurance benefits.  The matter was referred to Magistrate Judge R. Steven Whalen for all pretrial proceedings.  The parties have filed cross motions for summary judgment (Dkts. 10, 14).  Magistrate Judge Whalen issued a report and recommendation (R&R, Dkt. 15), recommending that the Defendant's motion be granted and that Plaintiff's motion be denied.  Plaintiff has filed objections to the R&R.  Pl.'s Objections (Dkt. 16).  The Court reviews de novo those portions of the R&R to which a specific objection has been made.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  For the reasons that follow, the Court will accept the recommendation in the R&R, overrule Plaintiff's objections, and grant the Defendant's motion for summary judgment (Dkt. 14).

The factual and procedural background of this case, along with the standard of review and legal principles governing social security appeals, have been adequately set forth by the Magistrate Judge in his R&R and need not be repeated here. Administrative Law Judge (ALJ) Jessica Inouye denied Plaintiff's claim for disability insurance benefits on finding that Plaintiff (i) was not impaired; (ii) had the residual functional capacity to perform a full range of work at all exertional levels, but with certain non-exertional limitations; (iii) retained the ability to perform his past relevant work as an automotive detailer; and (iv) had not been disabled from December 31, 2008, the alleged onset date, through June 30, 2010, the date last insured. After reviewing the record and the cross motions for summary judgment, the Magistrate Judge determined that substantial evidence supported the ALJ's conclusion that Plaintiff is not disabled. For the reasons set forth below, the Court agrees.

## II. ANALYSIS

Plaintiff advances three objections in support of his position that the decision of the ALJ is not supported by substantial evidence. The Court addresses each of Plaintiff's objections, in turn.

### A. First Objection

Plaintiff's first objection argues that the R&R erred in finding that the ALJ correctly analyzed the medical opinion of Dr. Suma Cherukuri, a treating psychiatrist. Pl.'s Objections at 3. Plaintiff states that he first treated with Dr. Cherukuri on October 11, 2010, after being transferred from Dr. M. H. Syed, another physician at the same facility – Community Mental Health. Plaintiff cites Cejka v. Commissioner of Social Security, No. 12-11102 (E.D. Mich.), arguing that the treatment with Dr. Cherukuri was part of a "team effort" and a "continuum of

psychiatric care." Id. at 4.[1]  Therefore, Plaintiff argues, the ALJ should have considered Dr. Cherukuri's opinion as "treating source opinion" under 20 C.F.R. § 404.1527.  Id. at 6.

In evaluating Plaintiff's objection, "[e]vidence relating to a time outside the insured period is only minimally probative, but may be considered to the extent it illuminates a claimant's health before the expiration of his insured status." Nagle v. Comm'r of Soc. Sec., 191 F.3d 452, at *1 (6th Cir. 1999) (citations omitted).  Generally, courts have affirmed an ALJ's decision to accord little weight to medical opinions offered after the expiration of the insured period.  For example, in Siterlet v. Commissioner of Social Security, 823 F.2d 918, 920 (6th Cir. 1987), the claimant argued that the ALJ improperly failed to give substantial weight to the opinion of a treating physician rendered eight months after the expiration of his insured status. The Sixth Circuit held that because the opinion was outside the insured period, it was "minimally probative." Id.  Additionally, the court found that the opinion was based, in part, on two other physicians' opinions that were also rendered outside the insured period.  Id.  The Sixth Circuit affirmed the ALJ, stating that it had found "sufficient evidence in the record to support the ALJ's rejection" of the physician's opinion.  Id.  See also Swain v. Comm'r of Soc. Sec., 379 F. App'x 512, 516 (6th Cir. 2010) (finding no error where the ALJ did not give controlling weight to opinions of two doctors because the doctors were not treating physicians prior to the expiration of the plaintiff's insured status).

Plaintiff here alleges that he became disabled on December 31, 2008.[2]  A.R. 45, 133-134. Plaintiff's date last insured (DLI) was June 30, 2010.  A.R. 31-32, 133.  Plaintiff began treating

---

[1] The authority Plaintiff relies upon is the R&R issued by Magistrate Judge Hluchaniuk on February 27, 2013 (Dkt. 17).  As of the date of this Order, that R&R has not yet been ruled on by the assigned district judge.

with Dr. Cherukuri on October 11, 2010, some seventy days after the expiration of his insured status.  A.R. 486-487.  Dr. Cherukuri completed a "Medical Provider's Assessment of Ability To Do Mental Work-Related Activities" of Plaintiff, which is dated March 22, 2011, approximately nine months after the expiration of Plaintiff's insured status.  A.R 538-542.  Plaintiff argues that this opinion and the notes over the course of Plaintiff's treatment with Dr. Cherukuri should be given controlling weight.  Pl.'s Objections at 3-6.

The issue turns upon the relevant time period of Plaintiff's DLI.  As Plaintiff alleges he became disabled on April 3, 2009 and his DLI is June 30, 2010, the most probative evidence regarding his alleged disability must arise between those dates.  For evidence outside the insured period, an ALJ "may" consider it, "to the extent it illuminates a claimant's health before the expiration of his insured status." Nagle, 191 F.3d at *1.  Here, the ALJ analyzed Dr. Cherukuri's opinion for relevance and found that it was outside the insured period and not probative.  The ALJ noted that Dr. Cherukuri began to treat Plaintiff approximately four months after Plaintiff's DLI, on October 11, 2010.  A.R. 28-29.  The ALJ also wrote in her decision that "[b]ecause Dr. Cherukuri did not treat the claimant during the relevant time frame the undersigned will not address his medical opinion, although it should be noted that Dr. Cherukuri explicitly qualified his statements by describing the claimant when he was off his medications.  Thus, the opinion would be of limited value, in any event." Id.  This statement by the ALJ refers to the March 22, 2011 "Medical Provider's Assessment of Ability To Do Mental Work-Related Activities."  A.R. 538.

---

[2] In his application for disability benefits, Plaintiff alleged he became disabled April 3, 2009. A.R. 133-134.  At his hearing, his attorney amended his onset date to December 31, 2008.  A.R. 45.

Notably, Dr. Cherukuri's opinion stated that Plaintiff first experienced his mental impairments for making occupation adjustments in October 2010.  A.R. 538.  Dr. Cherukuri's opinion also contrasts with Dr. Syed's clinical notes, where Dr. Syed routinely noted that Plaintiff was on medication, notably Klonopin, until his DLI.  A.R. 472, 475, 479, 482.  Opining that Plaintiff's mental impairments for making occupational adjustments began in October 2010 and noting that Plaintiff exhibited such impairments off his medication further reduces the relevance of Dr. Cherukuri's opinion because the opinion does not illuminate Plaintiff's mental health before the expiration of his insured status.  Nagle, 191 F.3d at *1.  Like Siterlet, where the Sixth Circuit affirmed the ALJ's decision to reject a medical opinion that was rendered eight months after the DLI and found to be heavily reliant on other medical opinions rendered outside DLI, the ALJ here rejected Dr. Cherukuri's opinion for being nine months outside Plaintiff's DLI and qualified because Plaintiff was off his medications.  Siterlet, 823 F.2d at 920.  Thus, the ALJ did not err by finding Dr. Cherukuri's opinion irrelevant.

In his objection, Plaintiff does not direct the court to contrary law.  Plaintiff cites the R&R in Cejka for the proposition that psychiatric care is a team effort, so that, in effect, the entire medical care provided by Community Mental Health, including Dr. Cherukuri's opinion, would be treated as a singular treating source opinion.  Pl.'s Objections at 4.  But Cejka is distinguishable because, in that case, the R&R addressed the rejection by the ALJ of a treating source opinion.  The R&R stated that the ALJ failed to consider treatment notes by "professional psychiatric staff" under the supervision of the treating physician; evidence from outside the insured period was not an issue.  Cejka, No. 12-11102, R&R at 28 (Dkt 17).  Here, Plaintiff is trying to connect the opinions of Dr. Syed and Dr. Cherukuri – two different physicians, who did

not treat Plaintiff simultaneously.  The record does not indicate that Dr. Cherukuri was under the supervision of Dr. Syed when Plaintiff began to treat with Dr. Cherukuri.

Plaintiff also argues, in support of his "team effort" theory, that because he had a "continuous treatment relationship" with Community Mental Health, the collective opinions of his physicians should be given deferential weight under 20 C.F.R. § 404.1527, which outlines how the ALJ should handle treating source opinions.  Plaintiff points to a regulation that states "the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion" to support his argument that Dr. Syed's and Dr. Cherukuri's opinions should be treated as a "continuous treatment relationship from January of 2010 through April of 2011."  Pl.'s Objections at 5 (quoting 20 C.F.R. § 404.1527(c)(2)).  Plaintiff does not direct the Court to any authority for the "team effort" theory he advances and the Court is unaware of a case supporting such a theory.  The regulations plainly indicate that medical opinions are offered by individual doctors and do not evidence any intent to aggregate opinions into a "team effort" concept.  See § 1527(a)(2) (medical opinions "are statements from physicians and psychologists or other acceptable medical sources").  Thus, the ALJ committed no error in declining to assign deferential weight to Dr. Cherukuri's opinion on a theory of "team effort."

Accordingly, the Court overrules Plaintiff's first objection.

### B.  Second Objection

In his second objection, Plaintiff argues that the R&R erred in failing to consider a January 24, 2007 "Mental Residual Functional Capacity Assessment" by Holly Harrin of Bay Regional Medical Center.  Pl.'s Objections 6-8.  Plaintiff contends that the ALJ "simply chose not to consider a medical opinion regarding Plaintiff's psychiatric limitations, with no

consideration whether or not that opinion was relevant to the time frame in issue." Id. (emphasis in original).

In considering Plaintiff's objection, Plaintiff correctly recognizes the import of 20 C.F.R. § 404.1520, which states that the ALJ "will consider all evidence in your case record when we make a determination or decision whether you are disabled." Id. at § 1520(a)(3). Generally, the ALJ "only considers evidence from the alleged disability onset date through the date last insured." Anderson v. Astrue, No. 11-15636, 2012 WL 4867703, at *3 n.1 (E.D. Mich. Sept. 18, 2012), adopted by 2012 WL 4868391 (E.D. Mich. Oct. 15, 2012). In considering medical records prior to a claimant's alleged onset date, an ALJ must consider the records to the extent they are relevant to the claim for disability benefits. Vandenboom v. Barnhart, 421 F.3d 754, 750 (8th Cir. 2005) (stating that "there is no valid reason to exclude consideration of medical records dated" February 2000 and February 8, 2001 prior to the plaintiff's alleged February 26, 2001 onset, where the plaintiff had head trauma in 1999); Woodhouse v. Astrue, 696 F. Supp. 2d 521, 535 n.14 (D. Md. 2010) (stating that evidence of disability prior to onset date was "relevant and information the ALJ must consider" because the plaintiff alleged a developmental disability onset of July 5, 2005, but had medical records from May 2005 that indicated no developmental disability). Like other evidence, the ALJ may also limit its weight in light of the evidence in the record. Williams–Overstreet v. Astrue, 364 F. App'x 271, 274 (7th Cir. 2010) (holding that ALJ did not err in limiting weight of evidence created before claimed onset date for purpose of providing foundation to consider claimant's current disability status).

Turning to the instant case, the ALJ found that Plaintiff was employed full-time without limitation at a greenhouse from October 2008 to December 2008. As the R&R notes, the record indicates that, although Plaintiff claims he became disabled on December 31, 2008, Plaintiff

ceased working because the greenhouse closed for the season, and not because of Plaintiff's psychological symptoms. A.R. 203, 215; R&R at 20. The ALJ found this full-time employment rendered irrelevant "any opinions regarding his functional limitations" prior to his full-time employment from October 2008 to December 2008. A.R. 29. In weighing Plaintiff's employment prior to alleged date of disability onset against the medical report from nearly a year-and-half earlier, the Court finds that the ALJ had substantial evidence to consider the report irrelevant. Williams–Overstreet, 364 F. App'x at 274 ("Substantial evidence supported the ALJ's conclusion that [the plaintiff's depression from a time period prior to the alleged disability onset date] did not limit her ability to work.").

Accordingly, the Court overrules Plaintiff's second objection.

**C. Third Objection**

In his third objection, Plaintiff argues that the R&R improperly affirmed the ALJ's finding that Plaintiff's Global Assessment of Functioning (GAF) scores from October 2009 and February 2010 should be given little weight. Pl.'s Objections at 8-13. Plaintiff argues that the "ALJ Decision reference to the GAF assessments as 'snapshots in time' is an unsupported lay opinion regarding a psychiatric diagnosis, and amounts to the ALJ 'playing doctor.'" Id. at 9-10. Plaintiff contends that the authority relied upon by the ALJ in her decision "fails to support the position that the global assessment of functioning is somehow not a valid part of a psychiatric diagnostic formulation that need not be assessed and weighed by the Commissioner in the course of addressing the diagnoses and opinions of a claimant's treating psychiatrists." Id. at 10. Plaintiff also argues that a GAF score is a part of a physician's opinion and the ALJ failed to give "good reasons" for giving Plaintiff's GAF scores little weight. Id. at 13.

The Sixth Circuit has stated that "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." White v. Comm'r of Soc. Sec., 572 F.3d 272, 276 (6th Cir. 2009).  As the Magistrate Judge recognized, R&R at 23, the Sixth Circuit further explained that a GAF score is a

> 'subjective determination that represents the clinician's judgment of the individual's overall level of functioning.  . . .  A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood.'

Id.  (quoting Edwards v. Barnhart, 383 F. Supp. 2d 920, 924 n.1 (E.D. Mich. 2005)).  The import of a GAF score "is thus not dispositive of anything in and of itself, but rather only significant to the extent that it elucidates an individual's underlying mental issues." Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 684 (6th Cir. 2011).  Indeed, the Sixth Circuit has commented that "we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 511 (6th Cir. 2002).

At issue in Plaintiff's objection is the way the ALJ treated two GAF scores – one from October 2009 and another from February 2010.  First, in October 2009, Plaintiff was hospitalized for a suicide attempt and Dr. Michael Ingram, M.D., assigned Plaintiff a GAF score of 35-43. A.R. 276.  Second, Plaintiff received a GAF score of 40 in February 2010 from his initial psychiatric evaluation with Dr. Syed.  A.R. 378.

In analyzing these scores, the ALJ cited the "Diagnostic and Statistical Manual of Mental Disorders" (DSM) and noted scores of 35-43 correlated with a level of functioning with major impairments.  A.R. 30.  The ALJ also stated that a GAF score is medical evidence that must be

9

addressed in making a disability determination.  Id.  The ALJ then cited two legal authorities:

"Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65

Federal Register 50746, 2000 WL 1173632 (Aug. 21, 2000) (to be codified at 20 C.F.R. pts. 404,

416) and Colon v. Barnhardt, 424 F. Supp. 2d 805, 812 (E.D. Pa. 2006).  Id.

In addressing the GAF scores, the ALJ found that Plaintiff's medical records indicated

that two days after Plaintiff was hospitalized in October 2009, he reported was doing better and

four days after admission that he was feeling "excellent."  A.R. 30, 279.  The ALJ assigned the

GAF score little weight because "Dr. Ingram's GAF score opinion was a snapshot in time, but

does not accurately reflect the claimant's functional abilities through the entire relevant time-

frame."  A.R. 30.  The ALJ also assigned Dr. Syed's GAF score little weight because after the

initial psychiatric evaluation, the plaintiff (i) did not attend scheduled therapy appointments in

February 2010; (ii) reported to Dr. Syed in March 2010 that he was doing better; and (iii)

reported to Dr. Syed in June 2010 that his mood was better and that his depression had improved.

Id.; A.R. 393-395; 399; 482.  The ALJ stated that "it is noteworthy that [Plaintiff] was again

reporting improved mental symptoms following consistent treatment."  A.R. 30.  The ALJ

concluded that the February 2010 GAF was not consistent with the record as a whole.

Here, the Court agrees with the R&R that the ALJ properly considered Plaintiff's October

2009 and February 2010 GAF scores.  As Sixth Circuit precedent indicates, the ALJ does not

have to consider a GAF score in any particular manner.  Kornecky, 167 F. App'x at 511.  The

ALJ had flexibility in deciding what significance to attribute to Plaintiff's GAF scores, and the

Court explicitly rejects Plaintiff's contention that the ALJ erred in treating the GAF scores as

"snapshots in time," when the ALJ did so in the context of other evidence in the record.  In

analyzing the GAF scores, the ALJ set forth plausible reasons for assigning them little weight.

In his objection, Plaintiff goes to great lengths to distinguish and minimize the ALJ's citation to the Federal Register and argues that citation "fails to give any support to the supposition by the ALJ [d]ecision that the GAF is not to be given any weight in assessment of disability." Pl.'s Objections at 11. The Court rejects this argument, as Plaintiff mischaracterizes the ALJ's decision. The passaged cited by the ALJ states:

> We did not mention the GAF scale to endorse its use in the Social Security and SSI disability programs, but to indicate why the third sentence of the second paragraph of proposed 12.00D stated that an individual's medical source "normally can provide valuable additional functional information." To assess current treatment needs and provide a prognosis, medical sources routinely observe and make judgments about an individual's functional abilities and limitations. The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

65 Fed. Reg. at 50764-50765. This citation supports the ALJ's proposition that "a GAF score constitutes medical evidence accepted and relied upon by a medical source and must be addressed in making a determination of a claimant's disability" because the passage cited by the ALJ indicates that the GAF scale is a form of evidence. A.R. 30. Plaintiff's objection also fails to consider Colon, the other legal authority cited by the ALJ, in the same sentence. The court in Colon explained that GAF scores were evidence that "must be addressed by an ALJ in making a determination regarding a claimant's disability," although the ALJ "may properly accept some parts of the medical evidence and reject other parts . . . he must consider all the evidence and give some reason for discounting the evidence he rejects." Colon, 424 F. Supp. 2d at 812.

In sum, the ALJ did not err in considering the GAF in light of the record as a whole. As the ALJ gave reasons for assigning the GAF scores limited weight and made her decision regarding Plaintiff's disability claim on substantial evidence, the Court overrules Plaintiff's third objection.

### III.  CONCLUSION

Accordingly, the Court accepts the recommendation in the R&R (Dkt. 15), overrules Plaintiff's objections (Dkt. 16), denies Plaintiff's motion for summary judgment (Dkt. 10), and grants Defendant's motion for summary judgment (Dkt. 14).

SO ORDERED.


Dated:  March 29, 2013                    s/Mark A. Goldsmith
        Flint, Michigan                   MARK A. GOLDSMITH
                                          United States District Judge

### **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 29, 2013.

                                          s/Deborah J. Goltz
                                          DEBORAH J. GOLTZ
                                          Case Manager

12